UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| SANDRA D. COPE, | Civil Action No.: 4:17-cv-02806-TER |
| Plaintiff, | |
| -vs- | |
| | **ORDER** |
| NANCY A. BERRYHILL, | |
| Acting Commissioner of Social Security; | |
| Defendant. | |

This is an action brought pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. Section 405(g), to obtain judicial review of a "final decision" of the Commissioner of Social Security, denying Plaintiff's claim for disability insurance benefits (DIB). The only issues before the Court are whether the findings of fact are supported by substantial evidence and whether proper legal standards have been applied.

## I. RELEVANT BACKGROUND

**A.    Procedural History**

Plaintiff filed an application for DIB on May 25, 2014, alleging inability to work since May 20, 2013. (Tr. 21). Her claims were denied initially and upon reconsideration. Thereafter, Plaintiff filed a request for a hearing. A hearing was held on August 11, 2016, at which time Plaintiff and a vocational expert (VE) testified. (Tr. 21). The Administrative Law Judge (ALJ) issued an unfavorable decision on October 5, 2016, finding that Plaintiff was not disabled within the meaning of the Act. (Tr. 21-33). Plaintiff filed a request for review of the ALJ's decision, which the Appeals Council denied on August 16, 2017, making the ALJ's decision the Commissioner's final decision.

(Tr. 1-3). Plaintiff filed this action on October 17, 2017. (ECF No. 1).

**B.     Plaintiff's Background**

Plaintiff was born on August 13, 1963, and was forty-nine years old at the time of the alleged onset. (Tr. 31). Plaintiff had at least a high school education and had past relevant work experience as a machine operator. (Tr. 31). Plaintiff alleges disability originally due to stage 1 breast cancer, weak heart, tachycardia, lymphodema, degenerative arthritis in neck and back, and right shoulder impingement and possible tear. (Tr. 75-76).

**C.     The ALJ's Decision**

In the decision of October 5, 2016, the ALJ made the following findings of fact and conclusions of law (Tr. 21-33):

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2019.

2. The claimant has not engaged in substantial gainful activity since May 20, 2013, the alleged onset date (20 CFR 404.1571 *et seq.*).

3. The claimant has the following severe impairments: spine disorder; fibromyalgia; dysfunction of the right shoulder; and obesity (20 CFR 404.1520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except for the following additional limitations. The claimant is never able to climb ladders, ropes, scaffolds, ramps, or stairs. She is able to frequently balance; occasionally stoop, crouch, kneel, or crawl; and perform occasional light overhead reaching. She is able to have frequent exposure to extreme cold and vibration, to the use of moving machinery, and to exposure to unprotected heights.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565).

7. The claimant was born on August 13, 1963 and was 49 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date. The claimant subsequently changed age category to closely approaching advanced age (20 CFR 404.1563).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from May 20, 2013, through the date of this decision (20 CFR 404.1520(g)).

## II. DISCUSSION

Plaintiff argues that the court should reverse and render the decision by the Commissioner, based on evidence submitted to the Appeals Council from Dr. Shallcross, which was not exhibited.

### A. LEGAL FRAMEWORK

#### 1. The Commissioner's Determination–of–Disability Process

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability." 42 U.S.C. § 423(a). Section 423(d)(1)(A) defines disability as: the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for at least 12 consecutive months. 42 U.S.C. § 423(d)(1)(A).

To facilitate a uniform and efficient processing of disability claims, regulations promulgated

under the Act have reduced the statutory definition of disability to a series of five sequential questions. *See, e.g., Heckler v. Campbell*, 461 U.S. 458, 460 (1983) (discussing considerations and noting the "need for efficiency" in considering disability claims). An examiner must consider the following: (1) whether the claimant is engaged in substantial gainful activity ("SGA"); (2) whether he has a severe impairment; (3) whether that impairment meets or equals an impairment included in the Listings;[1] (4) whether such impairment prevents claimant from performing PRW;[2] and (5) whether the impairment prevents him from doing SGA. *See* 20 C.F.R. § 404.1520. These considerations are sometimes referred to as the "five steps" of the Commissioner's disability analysis. If a decision regarding disability may be made at any step, no further inquiry is necessary. 20 C.F.R. § 404.1520(a)(4) (providing that if Commissioner can find claimant disabled or not disabled at a step, Commissioner makes determination and does not go on to the next step).

A claimant is not disabled within the meaning of the Act if he can return to PRW as it is customarily performed in the economy or as the claimant actually performed the work. See 20

---

[1] The Commissioner's regulations include an extensive list of impairments ("the Listings" or "Listed impairments") the Agency considers disabling without the need to assess whether there are any jobs a claimant could do. The Agency considers the Listed impairments, found at 20 C.F.R. part 404, subpart P, Appendix 1, severe enough to prevent all gainful activity. 20 C.F.R. § 404.1525. If the medical evidence shows a claimant meets or equals all criteria of any of the Listed impairments for at least one year, he will be found disabled without further assessment. 20 C.F.R. § 404.1520(a)(4)(iii). To meet or equal one of these Listings, the claimant must establish that his impairments match several specific criteria or be "at least equal in severity and duration to [those] criteria." 20 C.F.R. § 404.1526; *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990); *see Bowen v. Yuckert*, 482 U.S. 137, 146 (1987) (noting the burden is on claimant to establish his impairment is disabling at Step 3).

[2] In the event the examiner does not find a claimant disabled at the third step and does not have sufficient information about the claimant's past relevant work to make a finding at the fourth step, he may proceed to the fifth step of the sequential evaluation process pursuant to 20 C.F.R. § 404.1520(h).

C.F.R. Subpart P, § 404.1520(a), (b); Social Security Ruling ("SSR") 82–62 (1982). The claimant bears the burden of establishing his inability to work within the meaning of the Act. 42 U.S.C. § 423(d)(5).

Once an individual has made a prima facie showing of disability by establishing the inability to return to PRW, the burden shifts to the Commissioner to come forward with evidence that claimant can perform alternative work and that such work exists in the regional economy. To satisfy that burden, the Commissioner may obtain testimony from a VE demonstrating the existence of jobs available in the national economy that claimant can perform despite the existence of impairments that prevent the return to PRW. *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002). If the Commissioner satisfies that burden, the claimant must then establish that he is unable to perform other work. *Hall v. Harris*, 658 F.2d 260, 264-65 (4th Cir. 1981); *see generally Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987) (regarding burdens of proof).

### 2. The Court's Standard of Review

The Act permits a claimant to obtain judicial review of "any final decision of the Commissioner [ ] made after a hearing to which he was a party." 42 U.S.C. § 405(g). The scope of that federal court review is narrowly-tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the Commissioner applied the proper legal standard in evaluating the claimant's case. *See id.*; *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Walls*, 296 F.3d at 290 (*citing Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990)).

The court's function is not to "try these cases *de novo* or resolve mere conflicts in the evidence." *Vitek v. Finch*, 438 F.2d 1157, 1157-58 (4th Cir. 1971); *see Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir.1988) (*citing Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). Rather, the

5

court must uphold the Commissioner's decision if it is supported by substantial evidence. "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 390, 401; *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005). Thus, the court must carefully scrutinize the entire record to assure there is a sound foundation for the Commissioner's findings and that her conclusion is rational. *See Vitek*, 438 F.2d at 1157-58; *see also Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed "even should the court disagree with such decision." *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

**B. ANALYSIS**

Plaintiff argues that the court should reverse and render the decision by the Commissioner, based on evidence submitted to the Appeals Council from Dr. Shallcross, which was not exhibited by the Appeals Council.

In relation to consideration of additional evidence submitted to the Appeals Council, Plaintiff advocates for the application of 20 C.F.R. § 404.970 (eff. before Jan. 17, 2017) and Defendant advocates for application of 20 C.F.R. § 404.970 (eff. after Jan. 17, 2017). The ALJ's decision date was October 5, 2016. The request for review was submitted to the Appeals Council on October 20, 2016. The Appeals Council denied the request for review on August 16, 2017. Important here, the Appeals Council sent a letter dated March 24, 2017, that stated on May 1, 2017, the Appeals Council would be changing the rules it applied when considering whether to review Plaintiff's case. (Tr. 9-10). Under the new rules, the Appeal Council will review a case for a number of reasons, including:

The Appeals Council receives additional evidence that you show is new, material, and relates to the period on or before the date of the hearing decision. You must show that there is a reasonable probability that the additional evidence would change the outcome of the decision. You must also

show "good cause" for why you missed informing us about or submitting it at least 5 business days before the date of your hearing. We explain "good cause" in the next section.

(Tr. 9). On the second page of the letter, it states: "Because your case was pending at the Appeals Council before our rule about when to give us evidence became effective, we will find that you showed good cause for not submitting additional evidence earlier." (Tr. 10). "You must still show that the additional evidence is also new and material, relates to the period at issue, and shows a reasonable probability of changing the outcome of the hearing decision." (Tr. 10).

Thus, the additional "good cause" requirement added in 2017 is not at issue here. 20 C.F.R. § 404.970(b)(1)-(3)(eff. after Jan. 17, 2017).

The "old" regulation provided:

(b) If new and material evidence is submitted, the Appeals Council shall consider the additional evidence only where it relates to the period on or before the date of the administrative law judge hearing decision. The Appeals Council shall evaluate the entire record including the new and material evidence submitted if it relates to the period on or before the date of the administrative law judge hearing decision. It will then review the case if it finds that the administrative law judge's action, findings, or conclusion is **contrary to the weight of the evidence currently of record**.

20 C.F.R. § 404.970(b)( eff. before Jan. 17, 2017)(emphasis added).

The "new" regulation provided:

(5) Subject to paragraph (b) of this section [the additional good cause requirement], the Appeals Council receives additional evidence that is new, material, and relates to the period on or before the date of the hearing decision, and there is a **reasonable probability that the additional evidence would change the outcome of the decision**.

20 C.F.R. § 404.970(a)(5)(eff. after Jan. 17, 2017)(emphasis added).

The requirements of new, material, and relate to the period on or before the ALJ's decision date are the same in both versions of the regulation. The only difference, besides the good cause requirement not at issue here, is "contrary to the weight of the evidence currently of record" versus

"reasonable probability that the additional evidence would change the outcome of the decision."

The first requirement the court considers is whether the additional evidence submitted related to the period on or before the ALJ's decision date of October 5, 2016. The "Aetna Attending Physician Statement" completed by Dr. Shallcross on September 5, 2016, indicates office treatment visits were from December 11, 2014 to July 25, 2016. (ECF No. 14-1). It appears the additional evidence relates to the period before the ALJ's decision date.

The next question is whether the additional evidence is new. Evidence is new "if it is not duplicative or cumulative." *Wilkins v. Sec'y, Dept. of Health & Human Servs.*, 953 F.2d 93, 96 (4th Cir. 1991). To determine whether Dr. Shallcross's September 2016 opinion is duplicative or cumulative, the court reviews evidence from Dr. Shallcross, including the additional evidence.

The additional evidence is a form for a claim for long term/ permanent disability. (ECF No. 14-1). Diagnosis was right shoulder pain, right breast cancer, and osteopenia. Plaintiff's weight of 249 pounds was noted. Medications of neurontin 300 mg tid and lidocaine patches were indicated. (ECF No. 14-1). Appointments were as needed. Symptoms were right shoulder pain, neck pain, and atrial flutter, all first appearing in 2014. (ECF No. 14-1). Under "abilities/limitations," Plaintiff had the ability to work with others, give supervision, and work cooperatively with others in a group setting. Dr. Shallcross checked the box of "no ability to work[,] severe limitation of functional capacity; incapable of minimal activity." Further medical restrictions/limitations written in were "no overhead work, no heavy lifting or carrying." (ECF No. 14-1). Number of hours capable of working was 4 hours, 2 days a week. Such limitations were in effect permanently and Plaintiff had an estimated return to work date of "never." The question for objective findings that substantiate the impairment was not answered. Status was "stabilized." (ECF No. 14-1). Chronic pain was a

contraindication for participation in vocational rehabilitation. Plaintiff was motivated to return to work. (ECF NO. 14-1). The above was the extent of the form.

Of note, the ALJ found breast cancer, osteopenia, and chronic heart failure as non-severe impairments. (Tr. 23-24). The ALJ cited to treatment records of doing well with regard to her heart problems(Ex. 31F) and opinions of Dr. Stewart regarding heart failure. (Ex. 17F). The ALJ cited that even if cancer and treatments had more than a minimal effect on ability to do basic work activities at one point, it did not meet the durational requirement to be a severe impairment. (Tr. 24). Osteopenia was noted by the ALJ to be lower bone density than normal but not as low as osteoporosis and the evidence did not show Plaintiff had experienced any specific symptoms related to that impairment. (Tr. 24).

There were no "opinions" of Dr. Shallcross present in the record before the ALJ, but there were treatment notes from the office he was associated with that the ALJ considered.

Treatment records from Exhibit 21F show PA April Smith signed the note and assessed Plaintiff on December 11, 2014. (Tr. 563). Upon exam, Plaintiff was in no acute distress. Plaintiff's neck had decreased lateral rotation and bending and was tender over trapezius B. (Tr. 564). Plaintiff had 4/5 strength in the right upper extremity. Plaintiff had pain with range of motion of back and tender over L4-S1 facets. Plaintiff had widespread mild tenderness. Plaintiff had decreased abduction of shoulders. Gait was normal. Assessments were cervicalgia, lumbago, and upper extremity weakness. PA Smith stated: "Pt. is seen and evaluated by Dr. Shallcross who feels that pt. would benefit from PT once she is able to obtain insurance." Dr. Shallcross injected "into each of 2 trigger points." (Tr. 564).

On September 10, 2015, there is a note in the record from Dr. Nelson stating that Dr.

Shallcross did not recommend trigger point injections but started Plaintiff on a lidocaine patch. (Tr. 579).

Under Exhibit 27F, Plaintiff presented to Physiatry CrossCreek (where Dr. Shallcross practiced). (Tr. 621). Records show on September 24, 2015, there was a telephone reorder of Plaintiff's medications by Dr. Shallcross. (Tr. 623). On September 25, 2015, there was an encounter with PA Little with Dr. Shallcross as cosigner, due to lower back and neck pain. (Tr. 628). Plaintiff reported "doing about the same" and Neurontin seemed to help some but made her a little drowsy at first. The patches seemed to help some. (Tr. 629). No surgery had been recommended. (Tr. 629). Upon exam, Plaintiff had tenderness at the base of her skull and had a steady gait. (Tr. 629). Neurontin was increased. (Tr. 630). Both PA Little and Dr. Shallcross signed the note. (Tr. 631).

On November 24, 2015, Plaintiff was seen at Physiatry CrossCreek for neck pain. (Tr. 632). PA Smith was the main signer of the note with Dr. Shallcross as the cosigner. Plaintiff reported the increase in neurontin was working well for her. (Tr. 635-36). Plaintiff's worst pain was in her right shoulder and lower back. Upon exam, Plaintiff's right shoulder was limited in abduction. (Tr. 636). Both PA Little and Dr. Shallcross signed the note. (Tr. 638).

Exhibit 29F also contained notes from Physiatry CrossCreek. (Tr. 682). On January 25, 2016, Plaintiff was seen for lower back and right hip pain. (Tr. 682). History noted Plaintiff was stable and was still getting injections into her shoulder. "She knows she is going to need shoulder decompression soon." (Tr. 686). It was noted she had an extremely high deductible. Plaintiff was asymptomatic for a chiari malformation with a little bit of neck pain. It was noted she had been told she would not need surgery. (Tr. 686). Pain was a level eight. Plaintiff was positive for numbness,

back pain, arthralgias, neck pain, and neck stiffness. Plaintiff's gait was stable upon exam; Plaintiff walked flexed forward at the waist with decrease in lumbar lordosis. (Tr. 686). "Shoulder movement is intact with a strong impingement sign on the right." (Tr. 686). "Assessment: Right shoulder impingement probably in need of decompression soon, mild numbness, osteopenia, Chiari malformation nonsurgical." (Tr. 687). Plan was to continue current medications. "Activity ad lib. She is applying for disability and, unfortunately, may not be able to get back in the workplace at this point." (Tr. 687). The note was signed only by Dr. Shallcross. (Tr. 687).

On April 25, 2016, Plaintiff presented to Physiatry CrossCreek. (Tr. 688). PA Little signed the note. Dr. Shallcross cosigned the note. (Tr. 692, 694). Plaintiff's right shoulder was still sore and was trying to put off surgery for as long as possible. She can drive ok. She had some relief from the patches and neurontin was helping some with the pain. (Tr. 692). "She tries to get some exercise." (Tr. 692). Upon exam, she had decreased range of motion and tenderness in both shoulders. Gait was steady. (Tr. 693).

The above summary is the extent of treatment notes related to Dr. Shallcross in regard to the determination of the factor of "cumulative and duplicative." In performing the RFC analysis and the subjective symptom evaluation, the ALJ did cite to some of Dr. Shallcross's treatment notes noting report of some pain relief from medications, able to drive, and gets some exercise. (Tr. 29).

Dr. Shallcross's opinions of a "check" in the box for "no ability to work[,] severe limitation of functional capacity, incapable of minimal activity," handwritten limitation of "no overhead work, no heavy lifting or carrying," 4 hours of work two days a week, and these restrictions as permanent with estimated return to work as "never," can be construed as not duplicative of the record before the ALJ and may be considered new under the additional evidence test.

As for the "material" factor, it is in both the "old" and the "new" versions of § 404.970. Evidence is material if there is "a reasonable **possibility** that the new evidence would have changed the outcome." *Wilkins*, 953 F.2d at 96. Of note, the "new" § 404.970 contains the requirement of "there is a reasonable **probability** that the new evidence would have changed the outcome," still along with the separate "material" factor. 20 C.F.R. § 404.970(a)(5)(eff. after Jan. 17, 2017).

Considering now the question of whether Dr. Shallcross's disability form opinion is material, meaning whether it is reasonably possible that the form opinion would have changed the outcome, the court reviews the entirety of the record upon which the ALJ relied in finding Plaintiff was not disabled.

The ALJ cited to treatment notes of normal gait and December 2013 x-rays showing unremarkable cervical spine but lower lumbar facet arthropathy. (Tr. 28). The ALJ cited December 2013 notes of Plaintiff reporting right shoulder pain but the same notes state she reported she was considering joining the YMCA and felt she could exercise. The ALJ cited to Exhibit 7F. (Tr. 28). The ALJ noted this suggested she was able to do some type of physical activity. The ALJ noted evidence from 2014 indicated Plaintiff appeared to be somewhat active and had some pain improvement. March 2014 notes indicated Plaintiff had improvement in shoulder pain from physical therapy with discomfort with overhead activity. (Tr. 28). The ALJ stated an x-ray showed no osseous abnormalities and good joint space of her shoulder. (Tr. 28). The ALJ noted Plaintiff had full rotator cuff strength but with positive impingement with Hawkins' and Neer maneuvers. (Tr. 29). In April 2014, it was noted Plaintiff reported planning to start an exercise program soon. (Tr. 29). Plaintiff had back tenderness in April 2014 with normal gait and full grip strength. The ALJ cited to Exhibit 9F. (Tr. 29). In May 2014, Plaintiff reported to physical therapy that she walked

for exercise five days a week. (Tr. 29). Upon exam, she had mild pain with external rotation of right upper extremity. (Tr. 29). Plaintiff reported in May 2014 that she was considering going back to school. In June 2014, Plaintiff had normal gait and nontender back but right shoulder tenderness. MRIs showed minimal degenerative disc changes of the cervical spine and only minimally compressive bilateral hypotrophic changes L4-S1. Plaintiff reported improvement in pain from shoulder injections. In December 2014, Plaintiff reported she had more than 75% relief for 3 months. (Tr. 29). Plaintiff reported Mobic was helping her pain. The ALJ noted in 2015 and 2016 Plaintiff continued to have some pain but also some relief. In March 2015 Plaintiff ambulated without difficulty and had started a weight management program. (Tr. 29). In April 2015, Plaintiff was given a shoulder injection. In July 2015, Plaintiff had normal strength, reflexes and gait and reported walking half of a mile five days a week. Plaintiff's provider recommended she swim four to five days a week. The ALJ cited to Exhibit 23F. (Tr. 29). An MRI of her right shoulder showed some partial thickness tearing of the supraspinatus and some evidence of AC joint arthropathy. Plaintiff reported some relief from neurontin and patches in September 2015. Plaintiff stated her medication was effective in November 2015. In January 2016, her condition was described as stable. In April 2016, notes describe Plaintiff as having a very active morning before the exam, cleaning the house and dancing to music. In April 2016, Plaintiff reported some relief from medication. She reported being able to drive and tries to get some exercise. Plaintiff lost weight. Plaintiff's provider further encouraged her in May 2016 to get moderate physical activity for at least 30 minutes a day for 5 days a week. In June 2016, fibromyalgia pain was reported as relatively well controlled on medication with neck pain manageable. (Tr. 30). The ALJ noted the medical records and provider recommendations of exercise were inconsistent with Plaintiff's extreme limitations in

13

ability to sit, stand, and walk testified to at the hearing. The ALJ noted medications were relatively effective in controlling symptoms according to contemporaneous treatment notes. (Tr. 30). Plaintiff's reports to her treating providers indicated Plaintiff's daily activities were not as limited as indicated in her testimony. The ALJ noted the overhead reaching limitation was included in the RFC to account for the right shoulder impairment. (Tr. 31). Also, the ALJ limited her RFC to light work, which accounts for a restriction on heavy lifting.

Given the record before the ALJ and the substantial evidence cited to by the ALJ in determining Plaintiff was not disabled, it is apparent that there is not a reasonable possibility that Dr. Shallcross's form opinion, with no citation to objective findings and inconsistent with contemporaneous treatment records, would have changed the outcome here.

Because the additional evidence here is not material, the court does not decide the issue of what date controls what regulation applies on Appeals Council review, i.e., application of "reasonable probability[3]" versus "contrary to the weight of the evidence currently of record." Long-standing Fourth Circuit law defined "material" as a reasonable possibility the new evidence would have changed the outcome of the case. *See Meyer v. Astrue*, 662 F.3d 700, 704 (4th Cir. 2011); *Wilkins v. Secretary, Dep't of Health & Human Servs.*, 953 F.2d 93, 96 (4th Cir. 1991). "Thus, the new version of Section 404.970 increases a claimant's burden from showing a reasonable possibility to a reasonable probability, and makes the obligation to show a reasonable probability of a different outcome an **additional requirement to showing materiality**." *Jones v. Berryhill*, No.

---

[3] Probability sometimes is defined as chance above 50%. *See Hurley v. U.S.*, 923 F.2d 1091, 1097, fns 49-50 (4th Cir. 1991). "A probability is a 'condition or state created when there is more evidence in favor of the existence of a given proposition than there is against it.'"*Murray v. United States*, 215 F.3d 460, 464–65 (4th Cir. 2000)(quoting Black's Law Dictionary 1201 (6th ed.1990)). "It implies something that 'is more likely than not, or that is greater than 50%.'" *Id.*

1:17CV703, 2018 WL 3849914, at *5 (M.D.N.C. Aug. 13, 2018)(emphasis added).

### III. CONCLUSION

This Court is charged with reviewing the case only to determine whether the findings of the Commissioner were based on substantial evidence. *Richardson*, 402 U.S. at 390. Even where the Plaintiff can produce conflicting evidence which might have resulted in a contrary decision, the Commissioner's findings must be affirmed if substantial evidence supported the decision. *Blalock*, 483 F.2d at 775. The Commissioner is charged with resolving conflicts in the evidence, and this Court cannot reverse that decision merely because the evidence would permit a different conclusion. *Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984). As previously discussed, despite the Plaintiff's claims, he has failed to show that the Commissioner's decision was not based on substantial evidence. Based upon the foregoing, and pursuant to the power of the Court to enter a judgment affirming, modifying, or reversing the Commissioner's decision with remand in social security actions under sentence four of Sections 205(g) and 1631(c)(3) of the Social Security Act, 42 U.S.C. Sections 405(g) and 1338(c)(3), Commissioner's decision is AFFIRMED.

|  |  |
|---|---|
| February 15, 2019 | s/ Thomas E. Rogers, III |
| Florence, South Carolina | Thomas E. Rogers, III |
|  | United States Magistrate Judge |